EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Appellant,

v.

SOUTH CAROLINA NATIONAL BANK, Appellee.

No. 76-1977.

United States Court of Appeals, Fourth Circuit.

Argued June 6, 1977.

Decided Sept. 28, 1977.

John D. Schmelzer, E. E. O. C., Washington, D. C. (Abner W. Sibal, Gen. Counsel, Joseph T. Eddins, Associate Gen. Counsel, Beatrice Rosenberg, Asst. Gen. Counsel, E. E. O. C., Washington, D. C., on brief), for appellant.

J. Hamilton Stewart, III, Greenville, S. C. (Robert T. Thompson, Thompson, Ogletree & Deakins, Washington, D. C., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and WINTER and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

The Equal Employment Opportunity Commission appeals an order of the district court denying enforcement of a subpoena issued by the commission against the South Carolina National Bank.* The principal issue is whether the initial determination of the timeliness of a charge filed with the commission should be made by the district court or the commission. We conclude that this responsibility belongs to the commis-

* The district court's opinion is reported as *EEOC v. South Carolina National Bank*, 12 F.E.P. Cases 1565 (D.S.C.1976).

sion and that the bank's other objections to the subpoena do not bar its enforcement. Accordingly, we reverse and remand the case for enforcement of the subpoena.

## I.

On December 29, 1971, Bernice H. Stone filed a complaint with the Atlanta office of the commission charging the bank with discrimination on the bases of race and sex for its failure to rehire her following a maternity leave. Stone stated that before she took the leave, the bank had advised her that it would guarantee her neither a job nor a specific salary level should she be rehired after her leave. She alleged that when she requested reinstatement, she was told no positions were available, but that a bank official would contact her when an opening occurred. Periodic inquiries with the bank elicited similar responses. She claimed that during this time, however, white employees were rehired who had gone on maternity leave after she had. She specified May 14, 1971, as the most recent date on which discrimination had taken place.

To comply with amendments enacted while the charge was pending, on March 27, 1972, the commission notified the bank that a charge of discrimination in the bank's hiring practices had been filed. Matters rested for two and a half years until the commission began investigating the complaint in September, 1974. It then sent the bank a copy of a newly verified and amended complaint alleging discrimination on "May 14, 1971, and continuing" and later provided a copy of the original complaint.

When the bank refused to provide pertinent records voluntarily, the commission issued a subpoena on May 14, 1975, seeking data about Stone and information about the bank's maternity leave policies and practices. The commission's director of compliance denied the bank's subsequent petition to revoke the subpoena. When the bank failed to produce its records, the commission unsuccessfully sought to have the subpoena enforced by the district court.

## II.

The district court ruled that the commission lacked jurisdiction to pursue its investigation because Stone's complaint was untimely filed as a matter of law. It found that the bank refused to reinstate Stone from her maternity leave on or before May 14, 1971. Since the charge was not filed until December 29, 1971, the court concluded that it was barred by the 180-day limitation prescribed by 42 U.S.C. § 2000e–5(e).

If the bank had done no more than deny Stone reemployment on May 14, 1971, her charge might well be considered untimely. *See Reynolds v. Daily Press, Inc.*, 5 F.E.P. Cases 4, 5–6 (E.D.Va.1972). But Stone's allegations that the bank repeatedly promised to contact her when an opening occurred charge more than a simple refusal of reemployment. The sketchy record before us indicates that the bank's promise, while firm in assuring Stone that she would be considered for vacancies that occurred, was indefinite about the circumstances under which it would be kept. The bank appears to have assumed a continuing obligation to advise Stone of employment opportunities when a job became available. It is difficult to conclude, without more facts, that the bank was relieved of this duty after determining once or even several times that her services were not yet needed. It could have made its position clear by telling her flatly that she would not be reemployed, but according to the charge, it never did this. Nor on the present record is it clear that she should have been able to perceive that, on a certain date, the bank had ceased to consider her for employment as positions became available.

In sum, it is apparent that the issue of continuing discrimination in this case has not been fully explored. This brings us to the question of whether the district court or the commission should initially determine if the bank's alleged discrimination against Stone was of a continuing nature.

Title 42 U.S.C. § 2000e–9 confers on the commission and its agents investigatory powers similar to those of the National Labor Relations Board as set forth in 29

U.S.C. § 161. This authority includes the issuance of subpoenas requiring the production of evidence by the person being investigated. If the subpoena is not obeyed, the commission may apply to a district court for enforcement.

■ Settled authority holds that the role of the district court in an enforcement proceeding is sharply limited. The administrative agency, not the court, is responsible for determining in the first instance through its preliminary investigations the coverage of the statutes the agency must administer. *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 214, 66 S.Ct. 494, 90 L.Ed. 614 (1946); 1 Davis, Administrative Law, § 3.12 (1958). An agency need not show that the exercise of its jurisdiction is supported by reasonable cause unless the person to whom the subpoena is directed raises a substantial question that the court's process will be abused by enforcement. *See United States v. Powell*, 379 U.S. 48, 51, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). We applied these principles of administrative law in *Graniteville Co. v. EEOC*, 438 F.2d 32 (4th Cir. 1971). There the district court had required the commission to show reasonable cause as a prerequisite for enforcing a demand for evidence held by the company. Reversing, Judge Sobeloff observed:

> That is not only to place the cart before the horse, but to substitute a different driver for the one appointed by Congress. The statutory standard to be applied in a Demand enforcement proceeding is one of relevancy and materiality, not one of reasonable cause to believe the charge is true. 438 F.2d at 36.

The Ninth Circuit, quoting *Graniteville* in a case similar to the one before us, held that it is not the function of the district court in an enforcement proceeding to determine the timeliness of a charge that may appear to be of a continuing nature. *Pacific Maritime Association v. Quinn*, 491 F.2d 1294, 1296 (9th Cir. 1974).

■ We conclude that the general rule dealing with the enforcement of administrative subpoenas is applicable here. The records that the commission seeks are relevant and material. The bank has not shown that production will be burdensome or that this action has been brought in bad faith to harass it. The commission wishes to subpoena material that will facilitate an informed judgment concerning the timeliness of this vague complaint, a judgment that is an essential part of its administrative task. It is entitled to all the relevant facts in order that it may fulfill its duty. *Pacific Maritime Association v. Quinn*, 491 F.2d 1294, 1296–97 (9th Cir. 1974); *Graniteville Co. v. EEOC*, 438 F.2d 32, 41–42 (4th Cir. 1971). Our ruling does not foreclose the bank from asserting that the charge is untimely if a suit is subsequently filed. We hold only that the bank has raised this defense prematurely.

### III.

■ In ruling that laches barred enforcement of the subpoena, the district court relied heavily on *EEOC v. Exchange Security Bank*, 11 F.E.P. Cases 764 (N.D.Ala. 1974). This decision, however, has since been overruled by the court of appeals, which held that the commission could not be penalized for delay unless resulting prejudice could be established and unless the delay could be attributed to misconduct by the commission. *EEOC v. Exchange Security Bank*, 529 F.2d 1214, 1216–17 (5th Cir. 1976).

The record discloses no grounds for invoking laches to bar enforcement of the subpoena. The bank's generalized allegations of irreparable harm from the passage of time do not amount to a showing of prejudice. If the records sought by the commission are now unavailable, they need not be produced; if they are available, no prejudice has been suffered. The bank's burden of showing misconduct is not discharged by an unsubstantiated allegation that the commission procured the amended charge of continuing discrimination as a subterfuge to disguise inexcusable delay.

In a slightly different context, the Supreme Court has recently discussed the spirit in which limitations claims against the commission must be viewed. In *Occidental Life Insurance Co. v. EEOC*, —— U.S. ——, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977), the Court ruled that no statute of limitations applies to the filing of suits by the commission once jurisdiction over a complaint is properly obtained. The Court recognized that Congress was aware of the case load burden under which the commission operates, and it concluded that the delay necessitated by this burden ought not to bar a suit unless unusual circumstances dictate otherwise. 97 S.Ct. at 2458.

■ Although *Occidental* deals only with actions brought by the commission at the conclusion of its investigatory and conciliatory efforts, the premises of the case support the conclusion that the commission should not be barred by laches from proceeding at an earlier stage when neither prejudice to the employer nor misconduct by the agency has been established. In the absence of prejudice or misconduct, the limitation established by 42 U.S.C. § 2000e–5(e) affords sufficient protection from stale charges.

### IV.

■ Three other issues require only brief comment. First, the district court, again relying on *EEOC v. Exchange Security Bank*, 11 F.E.P. Cases 764 (N.D.Ala.1974), held that the commission's administrative procedure for reviewing challenges to subpoenas constituted an unlawful delegation of authority. We reverse this ruling for the reasons persuasively stated by Judge Roney in *EEOC v. Exchange Security Bank*, 529 F.2d 1214, 1217–19 (5th Cir. 1976).

■ Second, the attorney representing the bank requested the commission to send all correspondence about the charge to him. Acting on the basis of this letter, the commission addressed the subpoena to the bank's attorney, describing him as "Attor-

ney for South Carolina National Bank," and mailed it to the attorney's office. The commission should have addressed the subpoena to the bank official having custody of the records, and in the absence of written authority from the bank, it should not have mailed the subpoena to the attorney at his office. 29 C.F.R. 1601.15(a) (1974); EEOC Compliance Manual § 24.3(c)(1). Nevertheless, this incident provides no cause for refusing to enforce the subpoena. The commission mailed the subpoena in compliance with the attorney's request concerning correspondence, the bank was not prejudiced, and the district court can rectify the error by directing a bank official, not the attorney, to produce the records. *Cf. EEOC v. Laclede Gas Co.*, 530 F.2d 281, 283 (8th Cir. 1976); *EEOC v. Raymond Metal Products Co.*, 530 F.2d 590, 596 (4th Cir. 1976); *EEOC v. Kimberly-Clark Corp.*, 511 F.2d 1352, 1360 (6th Cir. 1975).

Finally, the district court awarded the bank, as prevailing party, attorneys' fees under 42 U.S.C. § 2000e–5(k). Because of our disposition of the appeal, this part of the district court's order must be vacated.

The judgment of the district court is reversed, and the case is remanded with directions that the subpoena issued by the EEOC be enforced.

ALBERT V. BRYAN, Senior Circuit Judge, dissents for the reasons stated by the district judge in holding that the charge of discrimination was untimely filed.